A. D. RICHARDS, Appellant, v. R. G. MONROE, *et al.*, Appellees.

1. **Promissory Notes:** FRAUD: JURISDICTION. Where the defense to an action upon a promissory note was that the same was without consideration, and was obtained through fraud, *held*, that a motion to transfer the cause to the equity side of the docket was properly overruled.

2. ———: ———: DECLARATIONS. In such an action, evidence of the declarations of the payee to the makers of the note before and at the time of its execution, and tending to show the fraud alleged, is admissible as against one claiming to be a purchaser without notice.

3. ———: ———: ———: CONSPIRACY. It being alleged that the plaintiff and the payee of the note had conspired to perpetrate the alleged fraud upon the defendants, *held*, that evidence of the declarations of either of the conspirators in the absence of the other was admissible.

4. ———: ———: INNOCENT PURCHASER: RECOVERY. Under the provisions of section 2114 of the Code, as amended by chapter 90 of Acts of the Twenty-second General Assembly, the holder of a promissory note procured by fraud, though a purchaser for value, before maturity, and without notice, is entitled to recover thereon no greater sum than the amount paid for the note, with interest and costs. The costs referred to, being the taxble costs in the case, need not be proven upon trial.

5. ———: ———: ———: INSTRUCTION DIRECTING VERDICT. There being evidence tending to show the alleged fraud and want of consideration, the case was properly submitted to the jury, under the provisions of section 2114 of the Code, whether there was proof of notice to the plaintiff or not.

6. ——: ——: INSTRUCTIONS TO JURY. An instruction to the jury, not to consider "any matter, statement or declaration not introduced in the evidence admitted in the trial, or fairly applicable thereto," is not subject to the construction as permitting the jury to consider matters not in evidence, or admitted, if fairly applicable to the case.

7. ——: ——: ——. There being evidence that, near the time of the purchase of the note in suit, the plaintiff purchased another note made to the same payee, and that he had been told by the maker thereof that the same was without consideration, held, that an instruction to the jury, that if such conversation was after the plaintiff purchased the note in suit, they should disregard the evidence, afforded no ground for complaint on the part of the plaintiff.

8. ——: ——: INNOCENT PURCHASER: NOTICE. A purchaser of a negotiable promissory note for value, before maturity, is not chargeable with notice of defenses thereto on the ground of fraud or failure of consideration, because of knowledge or information of infirmities therein such as would put a man of ordinary prudence upon inquiry to ascertain the truth of the matter.

Appeal from Fremont District Court.—HON. GEORGE CARSON, Judge.

FRIDAY, MAY 20, 1892.

ACTION upon a promissory note executed May 9, 1889, by the defendants for two hundred and four dollars, payable "to the order of B. A. Tyner," six months after date, indorsed in blank by Tyner, and "without recourse" by C. E. Taylor. The plaintiff alleges that he became the owner thereof for value before maturity. The defendants answered, admitting the execution of the note, denying that the plaintiff became owner thereof for value before maturity, and alleging that the note was procured from them by false and fraudulent representations, and without any consideration. They alleged that the note was given in consideration of a writing executed to them by Tyner, assigning his right to the profits on machines under certain letters patent for a washing machine, for two townships named, and agreeing to furnish them with

twenty-four machines at prices named, and to purchase back those not sold at the same price. They alleged that Tyner failed to furnish them with any machines, and that Taylor, who indorsed the note to the plaintiff, was a conspirator with Tyner to cheat and defraud the defendants, and that the plaintiff purchased the note with full knowledge of its fraudulent character, and that it was obtained without consideration. The plaintiff replied, denying the allegations of the answer, and moved to transfer the cause to equity, which motion was overruled, and the case tried by a jury. A verdict was returned in favor of the defendants, and judgment entered thereon, from which the plaintiff appeals. —*Reversed.*

*Samuel Holmes,* for appellant.

*W. W. Morgan,* for appellee.

GIVEN, J.—I. The appellant contends that it was error to overrule his motion to transfer the case to equity. The issues joined are upon the allegations of fraud and want of consideration in the note, and whether the appellant purchased it for value before due, without notice of the alleged fraud and want of consideration. These are triable at law. There was no demand for a reformation of either the note or contract, or for any other equitable relief. The motion to transfer was properly overruled.

> 1. PROMISSORY notes: fraud: jurisdiction.

II. The appellant complains of the admission of certain testimony over his objection. The defendants were permitted to testify to what Tyner said to them before and at the time they executed the note. This was admissible, not to vary or contradict the writings, but to show the fraud alleged.

> 2. ——: ——: declarations.

III. The defendants were also permitted to testify to a conversation with Taylor, to whom Tyner assigned the note at a time when Taylor held it. It is charged in the answer that Tyner and Taylor had conspired to perpetrate the alleged fraud upon the defendants, and it is sought to charge the appellant with notice. through Taylor. Under these circumstances, the acts and declarations of Taylor were admissible as tending to show the conspiracy.

<span style="margin-left:2em">3. —: —: —: conspiracy.</span>

The appellee Watkins, having executed the note by his mark, being asked, "you didn't sign the note that is sued on, did you?" answered, "No, sir." The appellees contend that, as the execution of the note was admitted, this was prejudicial, and should have been withdrawn. Evidently the witness meant by his answer that he had not written the name, as later he stated: "We signed the note. I got some one to sign my name. Told him to sign it, or make my mark." No question was made or submitted as to execution of the note, and no misunderstanding or prejudice could have arisen from the statement complained of.

William Green was permitted to testify to what Taylor said to him in the absence of the appellant, as to the way he and Tyner were doing business in handling territory and notes. This was admissible, as tending to showing the alleged conspiracy and fraud in connection with other testimony tending to show notice thereof to appellant.

IV. The defendants were permitted to show by the appellant, over his own objection, what amount he paid for the note, namely, fifty-five dollars. Thereupon the appellant was asked by his own counsel, "What costs and expenses are there attached to this suit on this note?" also, "What costs has this suit occasioned you?"—to both of which appellees' objections were sustained. Under section 2114 of the Code, as amended by chapter 90 of

<span style="margin-left:2em">4. —: —: innocent purchaser: recovery.</span>

Acts of the Twenty-second General Assembly, if this note was procured by fraud from the defendants, the plaintiff, though a purchaser for value before due without notice of the fraud, would not be entitled to recover thereon a greater sum than he had paid for the note, with interest and costs. In view of this statute, it was competent for the appellees to show the amount paid for the note. Costs here referred to are the taxable costs in the case, and are not required to be proven. The interest to which the appellant might be entitled was a mere matter of calculation from the amount paid. We see no error in these rulings of the court.

V. After all the testimony was introduced, the appellant moved for a verdict for the reason that no defense had been proven. There was evidence tending to show the fraud and want of consideration alleged, and that the plaintiff purchased with notice. The case was therefore properly submitted to the jury. As under section 2114 of the Code, the plaintiff would be entitled to recover the amount paid by him for the note, with interest and costs, if he purchased without notice, even though the fraud existed, it would have been proper to have submitted the case to the jury, in the absence of evidence of notice.

*5. ——: ——: ——. instruction directing verdict.*

VI. The court instructed the jury that "you should not consider any matter, statement, or declaration not introduced in the evidence admitted in the trial, or fairly applicable thereto." It is contended that this permitted the jury to consider matters not in the evidence, or admitted, if fairly applicable. We think the jury would not so understand the instruction. Its fair construction is that the jury were not to consider any matter, statement, or declaration not in the evidence or admitted, and only such thereof as were fairly applicable to the case.

*6. ——: ——: instructions to jury.*

If a matter was proven or admitted that was not fairly applicable to the case, it was not entitled to consideration. There was no error in instructing that the alleged fraud might be inferred from all the circumstances.

The court instructed that, to defeat the plaintiff's recovery, it must appear that Tyner obtained the note through fraud as alleged, and that the plaintiff had notice thereof before he purchased; that, if both these matters were established, they should find for defendants, "but, if you fail to find one or both of said facts, you should find for plaintiff." This is a correct statement of law applicable to the case. The construction given to the written contract in the sixth paragraph of the charge is correct.

VII. It appeared in evidence that near the time at which the plaintiff purchased the note in suit, he purchased another note from Taylor, executed by one English to Tyner, and that English had told him that he had not received any machines. The court instructed that, if this conversation was after the plaintiff purchased the note in suit, they should disregard the evidence. We fail to see any ground for complaint on the part of the appellant.

VIII. The eighth paragraph of the charge is as follows: "*Eighth.* If you find from the evidence that the plaintiff obtained said note before due, for value, without notice of defendants' alleged defense of failure of consideration and fraud, and what is meant by 'notice' is that plaintiff did not have such knowledge or information as would put a man of ordinary prudence upon inquiry to ascertain the truth of the matter alleged. For unless such notice is shown, the presumption arises that plaintiff purchased said note in good faith; if it shall appear that the alleged purchase was made in the ordinary course of business." This charge, we think,

must be construed as laying down the rule that when a purchaser of a negotiable promissory note for value, before due, has such knowledge or information of infirmities in the note as would put a man of ordinary prudence upon inquiry to ascertain the truth of the matter, he will be held to have notice. Such is certainly not the rule in this state. "The early and present doctrine is that the right of a *bona fide* holder for value, in the usual course of business, of negotiable paper, cannot be defeated by proof that he was negligent, and omitted to make inquiries which common prudence would have dictated." *Lake v. Reed*, 29 Iowa, 258; *Lane v. Evans*, 49 Iowa, 156. In *Pond v. Agricultural Works*, 50 Iowa, 596, 600, it is said: "To charge the holder of a negotiable promissory note with notice of infirmities, he must have been guilty of something more than mere negligence in taking the note. Indeed, gross negligence, it is said, is not sufficient, and that nothing but fraud is sufficient to destroy the character of the holder as one who acted in good faith." In *Cook v. Wierman*, 51 Iowa, 561, 564, it is said: "the rule in England now appears to be that even gross negligence will not necessarily defeat a recovery, and will do so only where it is such as to evince actual bad faith. In this country the decisions have not been entirely uniform, but the weight of authority is probably in accordance with the later English rule." It will be seen, in the light of these authorities, that the instruction given was not in accordance with the rule as held in this state. The exception to this instruction presents directly the question what the rule is in such cases. In *Merrill v. Hole*, *ante*, page 66, the question was as to the admissibility of certain testimony.

The appellant's further contention is that the verdict is contrary to the law and the evidence. As for the error just mentioned the case must be reversed, we need not consider this last claim of the appellant. REVERSED.